KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN BARRERA-BARRERA,<br><br>Defendant. | Criminal Case No. 08CR0014-WQH<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**(1) COMPEL DISCOVERY AND PRESERVE EVIDENCE AND**<br>**(2) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>Date: April 1, 2008<br>Time: 2:00 p.m.<br>Honorable: William Q. Hayes |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motion for Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

///

///

## I

## STATEMENT OF FACTS

### A. Defendant's Criminal and Immigration Record

Defendant, Juan Barrera-Barrera, is a 59-year-old citizen of Mexico. In 1976, Lancaster County Pennsylvania filed a criminal complaint against Defendant, who was using the name of Crescencio Barrera at that time. The complaint alleged that Defendant murdered another person with malice aforethought, by stabbing the victim in a knife. On September 21, 1976, Defendant pleaded guilty to murder, and the court found him guilty of voluntary manslaughter. Defendant was sentenced to a state prison term of five to ten years. Defendant was released after serving five years at the Huntingdon correctional facility.

Defendant's birth certificate indicates he was born on July 23, 1948 in the state of Guerrero, Mexico. The birth certificate indicates that both of Defendant's parents were Mexican citizens. After Defendant served his sentence for voluntary manslaughter, he claims that he re-entered the United States without a visa through the San Ysidro port of entry on December 21, 1984.

In May of 1988, Defendant applied for temporary resident status as a special agricultural worker. Defendant's application relied exclusively on an affidavit purportedly from Roy Perez, fraudulent labor contractor, to corroborate his alleged experience harvesting grapes for 102 days in the summer of 1985 in Bakersfield. Subsequent investigation by the Department of Justice revealed that Roy Perez was listed as the employer/affiant for 2,506 separate applicants for temporary resident status. The investigation also demonstrated that Roy Perez did not work as a labor contractor in Bakersfield, as the 2,506 applications stated. Roy Perez was convicted of providing false statements to the government. As part of Roy Perez's investigation, Perez indicated that he never signed affidavits indicating that thousands of people had worked for him in Bakersfield picking grapes in the summer of 1985. The Immigration and Naturalization Service denied Defendant's application, noting that his only evidence of his status as a special agricultural worker was the fraudulent Roy Perez affidavit. Defendant appealed the denial of his application for status as a temporary resident. In 1999, the Immigration and Naturalization Service's Office of Administrative Appeals dismissed Defendant's appeal of his amnesty decision.

In 2002, Defendant filed for asylum. However, his application was filed eighteen years after he entered the United States, and eight years after Defendant claimed he last entered the United States. The asylum officer denied the application, because economic hardship is not a valid ground for asylum, and because there was no valid reason to account for the delay in filing the asylum application. Following the denial of the asylum application, the INS issued a Notice to Appear before an immigration judge, alleging that Defendant was an alien illegally present in the United States.

Immigration Judge Ho entered an order of removal on September 12, 2005, determining that Defendant was ineligible for voluntary departure. On November 13, 2007, the Board of Immigration Appeals dismissed Defendant's appeal of his removal order. On December 7, 2007, Defendant reported to immigration officials and was removed by commercial airline on December 10, 2007.

**B. Defendant's Apprehension**

Merely six days after his removal to Mexico, Defendant was apprehended near Calexico, after illegally re-entering the United States. A remote video surveillance camera showed a group of individuals crossing the All American Canal twelve miles east of the Calexico Port of Entry.

Agent Camarena responded to the area and searched for the group. On the north side of the canal, Agent Camarena discovered a group of people waiting near some high brush. Agent Camarena identified himself as a Border Patrol agent and asked each individual their citizenship status and whether each person had documents to enter the United States. Each person, including Defendant, indicated he or she was a Mexican citizen with no documents to legally enter this country. All of the aliens were transported to the Calexico Border Patrol station for processing.

After discovering Defendant's criminal and immigration history, the agents informed Defendant that he was going to be prosecuted criminally, and that his administrative rights no longer applied. The agents read the Miranda warnings to Defendant, who elected to answer questions. The interview was recorded on videotape. During the interview, Defendant admitted that he was a Mexican citizen who did not have the proper documentation to legally work or reside in the United States. Defendant admitted that he was deported from the United States previously, but claimed the Secretary of Homeland Security gave him permission to enter the United States. A check of immigration databases revealed that no such permission was given to Defendant.

On January 2, 2008, a federal grand jury for the Southern District of California returned a one-count Indictment against Defendant, charging him with being an alien who was found in the United States without the consent of the Attorney General or the Secretary of Homeland Security, after having been previously excluded, deported, or removed, in violation of Title 8 U.S.C. § 1326. The Indictment further alleged that Defendant was removed from the United States subsequent to September 17, 1979.

## II

## UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

### A. ORDER COMPELLING DISCOVERY IS UNNECESSARY

No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 608 pages of discovery as of the filing of this response, as well as a digital video recording of Defendant's post-arrest Miranda interview. Defense counsel has also received copies of the non-privileged documents from Defendant's A-file. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

1. Defendant's Statements

The United States has already provided defense counsel with an incident report detailing his brief field statements, as well as a DVD recording of his post-arrest interview.

2. Arrest Reports, Notes and Dispatch Tapes

The United States has provided Defendant with the report related to Defendant's arrest in this case. The United States is not aware of the existence of any dispatch tapes relevant to this case, but will provide a copy of all existing deportation tapes, which have been requested. The United States will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents that are available at this time. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

government witnesses). However, the Government objects to providing Defendant with a copy of any available rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

3. Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material

"when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

4. Information that May Result in a Lower Sentence

The Government is unaware of any mitigating information in this case, and recognizes that Defendant's lengthy history of criminal and immigration violations is aggravating information.

5. Defendant's Prior Record

The United States has provided Defendant with a copy of all documents relating to Defendant's prior criminal record within the Government's possession, custody, or control and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the United States determines that there are any additional documents reflecting Defendant's prior criminal record, the United States will provide those to Defendant.

6. 404(b) and 609 Evidence

The United States will disclose in advance of trial the general nature of any "other bad acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include charging and conviction documents from Defendant's state court criminal case.

7. Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

8. Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible

objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. If color photographs will be used at trial, Defendant will receive copies in advance.

9. Evidence of Bias or Motive to Lie

Defendant requests evidence showing bias motive to falsify or distort testimony. The United States recognizes its obligation to provide information related to the prejudice, bias or other motive to slant testimony of trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959). At this time, the United States is unaware of any prospective witness who is biased or prejudiced against Defendant or who has a motive to falsify or distort his or her testimony.

10. Impeachment Evidence

The United States acknowledges its obligation to provide impeachment information about its witnesses that meets the relevant standard of materiality, i.e., "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." Blanco, 392 F.3d at 387. The United States has or will comply with its obligation.

11. Evidence of Criminal Investigation of Government Witness

The United States recognizes and will comply with its obligations under the case law and discovery rules to disclose exculpatory information and impeachment information. To the extent such disclosures are not required by the case law and rules, the United States opposes Defendant's broad request for evidence of any disciplinary investigations into prospective witnesses by federal, state or local authorities, regardless of the outcome of the investigations. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beavers v. U.S., 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state

authorities).

12. Evidence Affecting Perception and Memory

The United States is unaware of any evidence that any government witness's physical ability to perceive, recollect or communicate or commitment to tell the truth is impaired. The United States opposes the request for information that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. This request is overly broad and ignores the standard of materiality set forth in Brady for exculpatory or impeachment information.

13/24. Witness Addresses

The United States will provide the names of the witnesses it intends to call at trial. Similarly, the government trusts that Defendant will provide the names of the witnesses he intends to call. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the law enforcement agents who apprehended him. The names of these individuals have already been provided to Defendant.

14. Witnesses Favorable to Defendant

The Government is not aware of any witnesses who would present testimony favorable to Defendant. As indicated above, the United States will comply with its discovery obligations to produce information that is exculpatory to Defendant. To the extent that it discovers such information, the United States will provide information about witnesses who made favorable statements about Defendant.

15. Statements Relevant to the Defense

Again, the Government is well aware of its duty to turn over any potentially exculpatory information.

16. Jencks Act Material

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

17. Giglio Information

The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150 (1972).

18. Scientific and Other Information

In advance of trial, the Government will turn over any scientific reports.

19/22. Henthorn Material

In advance of trial, the Government will arrange for agencies to conduct a review of the witnesses' personnel files, to determine if there is any information that could be used for impeachment of the witness.

20/25. Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). Any bias issues will be handled pursuant to Brady.

21. Expert Witnesses

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

23. Training of Law Enforcement Officers

Defendant requests copies of written policies and training manuals issued by the Department of Homeland Security regarding the handling of vehicles containing contraband, the detention of individuals within those vehicles, the search of those vehicles and their occupants, and questioning of subjects and witnesses. The United States opposes this motion. Defendant cites absolutely no authority in support of this request. Defendant does not explain how Brady, Rule 16, or any other rule of disclosure require the United States to produce the requested information.

26. Residual Request

As stated above, the United States will comply with its discovery obligations in a timely manner.

27. Preservation of Evidence

______The United States will preserve all evidence to which the defendant is entitled to pursuant to the relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence.

**LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request for leave to file further motions, so long as such motions are based on discovery not yet received by Defendant.

//

//

//

//

**V**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED: March 28, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

***/s/ Christina M. McCall***

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JUAN BARRERA-BARRERA, Defendant. | Case No. 08CR0014-WQH **CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Christian de Olivas

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2008.

/s/ Christina M. McCall

CHRISTINA M. McCALL