KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN BARRERA-BARRERA,<br><br>Defendant. | Criminal Case No. 08CR0014-WQH<br><br>**UNITED STATES' MOTIONS IN LIMINE TO:**<br><br>**(1) ADMIT A-FILE DOCUMENTS**<br>**(2) PRECLUDE DEFENDANT FROM CHALLENGING HIS PRIOR ORDER OF DEPORTATION**<br>**(3) INTRODUCE EXPERT TESTIMONY**<br>**(4) PROHIBIT REFERENCE TO REASON WHY DEFENDANT REENTERED U.S.**<br>**(5) PROHIBIT REFERENCE TO PRIOR RESIDENCY**<br>**(6) PROHIBIT REFERENCE TO POTENTIAL PUNISHMENT**<br>**(7) EXCLUDE WITNESSES**<br>**(8) PRECLUDE DEFENSE EXPERT WITNESSES**<br>**(9) PRECLUDE INTRODUCTION OF NECESSITY OR DURESS**<br>**(10) COMPEL RECIPROCAL DISCOVERY**<br><br>Date: May 5, 2008<br>Time: 2:00 p.m.<br>Honorable: William Q. Hayes |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney and hereby files its Motions in Limine. These motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF FACTS

### A. Defendant's Criminal and Immigration Record

Defendant, Juan Barrera-Barrera, is a 59-year-old citizen of Mexico. In 1976, Lancaster County Pennsylvania filed a criminal complaint against Defendant, who was using the name of Crescencio Barrera at that time. The complaint alleged that Defendant murdered another person with malice aforethought, by stabbing the victim in a knife. On September 21, 1976, Defendant pleaded guilty to murder, and the court found him guilty of voluntary manslaughter. Defendant was sentenced to a state prison term of five to ten years. Defendant was released after serving five years at the Huntingdon correctional facility.

Defendant's birth certificate indicates he was born on July 23, 1948 in the state of Guerrero, Mexico. The birth certificate indicates that both of Defendant's parents were Mexican citizens. After Defendant served his sentence for voluntary manslaughter, he claims that he re-entered the United States without a visa through the San Ysidro port of entry on December 21, 1984.

In May of 1988, Defendant applied for temporary resident status as a special agricultural worker. Defendant's application relied exclusively on an affidavit purportedly from Roy Perez, fraudulent labor contractor, to corroborate his alleged experience harvesting grapes for 102 days in the summer of 1985 in Bakersfield. Subsequent investigation by the Department of Justice revealed that Roy Perez was listed as the employer/affiant for 2,506 separate applicants for temporary resident status. The investigation also demonstrated that Roy Perez did not work as a labor contractor in Bakersfield, as the 2,506 applications stated. Roy Perez was convicted of providing false statements to the government. As part of Roy Perez's investigation, Perez indicated that he never signed affidavits indicating that thousands of people had worked for him in Bakersfield picking grapes in the summer of 1985. The Immigration and Naturalization Service denied Defendant's application, noting that his only evidence of his status as a special agricultural worker was the fraudulent Roy Perez affidavit. Defendant appealed the denial of his application for status as a temporary resident. In 1999, the Immigration and Naturalization Service's Office of Administrative Appeals dismissed Defendant's appeal of his amnesty decision.

In 2002, Defendant filed for asylum. However, his application was filed eighteen years after he entered the United States, and eight years after Defendant claimed he last entered the United States. The asylum officer denied the application, because economic hardship is not a valid ground for asylum, and because there was no valid reason to account for the delay in filing the asylum application. Following the denial of the asylum application, the INS issued a Notice to Appear before an immigration judge, alleging that Defendant was an alien illegally present in the United States.

Immigration Judge Ho entered an order of removal on September 12, 2005, determining that Defendant was ineligible for voluntary departure. On November 13, 2007, the Board of Immigration Appeals dismissed Defendant's appeal of his removal order. On December 7, 2007, Defendant reported to immigration officials and was removed by commercial airline on December 10, 2007.

**B. Defendant's Apprehension**

Merely six days after his removal to Mexico, Defendant was apprehended near Calexico, after illegally re-entering the United States. A remote video surveillance camera showed a group of individuals crossing the All American Canal twelve miles east of the Calexico Port of Entry.

Agent Camarena responded to the area and searched for the group. On the north side of the canal, Agent Camarena discovered a group of people waiting near some high brush. Agent Camarena identified himself as a Border Patrol agent and asked each individual their citizenship status and whether each person had documents to enter the United States. Each person, including Defendant, indicated he or she was a Mexican citizen with no documents to legally enter this country. All of the aliens were transported to the Calexico Border Patrol station for processing.

After discovering Defendant's criminal and immigration history, the agents informed Defendant that he was going to be prosecuted criminally, and that his administrative rights no longer applied. The agents read the Miranda warnings to Defendant, who elected to answer questions. The interview was recorded on videotape. During the interview, Defendant admitted that he was a Mexican citizen who did not have the proper documentation to legally work or reside in the United States. Defendant admitted that he was deported from the United States previously, but claimed the Secretary of Homeland Security gave him permission to enter the United States. A check of immigration databases revealed that no such permission was given to Defendant.

On January 2, 2008, a federal grand jury for the Southern District of California returned a one-count Indictment against Defendant, charging him with being an alien who was found in the United States without the consent of the Attorney General or the Secretary of Homeland Security, after having been previously excluded, deported, or removed, in violation of Title 8 U.S.C. § 1326. The Indictment further alleged that Defendant was removed from the United States subsequent to September 17, 1979.

At the motion hearing on April 1, 2008, this Court set a trial date of May 6, 2008, despite being notified by the prosecutor that the prosecutor already head a trial set in front of Chief Judge Gonzalez on that date. This Court indicated that any suppression motion would have to be filed by April 21, 1008, and a motion hearing would be held on May 5, 2008, when the prosecutor's trial conflict would be addressed.

## II

## A. THE COURT SHOULD ADMIT A-FILE DOCUMENTS

### 1. A-File Documents are Admissible as Public Records or Business Records

The United States intends to offer documents maintained by the former Immigration and Nationalization Service and current Department of Homeland Security pertaining to Defendant. The agency maintains an "A-file" or "Alien-file" on Defendant, which contains documents reflecting most of Defendant's immigration encounters. The United States moves to introduce "A File" documents to establish Defendant's alienage, prior deportation, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola Dominguez, 125 F.3d 1315 (9th Cir. 1997). In Loyola Dominguez, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola Dominguez argued that admission of the documents violated the rule against hearsay and denied him his Sixth Amendment right to confront

witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

Loyola-Dominguez is simply among the more recent restatements of the public-records and business-records rules. Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence as absence of a public record); United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding warrant of deportation admissible to prove alienage); United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995) (district court properly admitted warrant of deportation as public record); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record).

2. A Certificate of Non-existence Does not Violate the Confrontation Clause

The United States moves to introduce a Certificate of Non-existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security and certifying that there are no records in any of the Department's databases, files, or archives that Defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005); Sotelo, 215 F.3d 1039, 1042-43.

**B. THE COURT SHOULD PROHIBIT DEFENDANT FROM COLLATERALLY ATTACKING HIS PRIOR DEPORTATION ORDER AT TRIAL**

Defendant has not challenged the lawfulness of his prior deportation proceeding. Thus, Defendant should be barred from raising such issue at trial. The validity of a prior deportation is a

matter of law and not of fact and as such it is up to the judge to make such ruling. In fact the lawfulness of the prior deportation is not an element of illegal reentry. The significant factor is that the Defendant was in fact physically removed from the United States.

Although a criminal defendant can move to challenge the lawfulness of his prior deportation, this can only happen at the motion stage, not at the trial. In United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996), the Ninth Circuit held that at trial the government does not have to prove the lawfulness of the prior deportation because lawfulness of the prior deportation is not an element of the offense. The only matter the government must prove is that the defendant was actually deported.

Based on the Alvarado-Delgado decision and others like it, any evidence of the lawfulness of the prior deportation is irrelevant since it is not an element of the offense. Because this Court has already denied Defendant's challenge to the validity of his prior deportation, Defendant should not be permitted to attempt to repeat the challenge in front of the jury.

**C. THE COURT SHOULD ADMIT EXPERT TESTIMONY**

The United States moves to admit testimony of a fingerprint expert to identify Defendant as the person who was previously deported from the United States, and found in the United States on December 17, 2007. The United States is providing notice of its intent to call Lisa Dimeo or David Beers as an expert and is providing Defendant with a summary of Ms. Dimeo's and Mr. Beers' qualifications.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704. Here, the fingerprint expert's testimony will

assist the triers-of-fact in determining whether the deportation and found-in evidence relate to the individual in the courtroom. Defendant has been provided notice of the United States' expert, his report of conclusions, and a copy of his curriculum vitae.

Because the evidence goes to the essential question of identity, this expert testimony should be admitted.

**D. THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of why Defendant violated Section 1326 is patently irrelevant to the question of whether he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is irrelevant.

The case of United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980), is illustrative. Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. Id. at 491. On appeal, she argued that the district court erred in granting the government's motions *in limine* to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's

proof of the elements of the charged crime," id. at 492, and the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

**E. THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

The Court should preclude Defendant from introducing evidence at trial of any former residence in the United States, legal or illegal. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993) overruled on other grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the district court granted the United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. The Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id. Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of the involuntariness of her initial residence; her continuous residency since childhood; her fluency in the English language; and the legal residence of immediate family members. Id. at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. The court also noted that admission of the evidence would run "contrary to the intent of Congress," because "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article

III judges, and not to juries." Id. (emphasis added).

Accordingly, evidence to residency, U.S. citizen children and spouses, and difficulty of surviving in Mexico should be precluded.

**F. MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEFENDANT'S AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

"Evidence which is not relevant is not admissible," (Fed. R. Evid. 402), and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Ninth Cir. Model Jury Instructions, § 3.1 (2003). Here, it is anticipated that Defendant may attempt to introduce evidence about his family circumstances or medical condition. This information is irrelevant to this case and should be excluded. Such evidence is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

Defense counsel may wish to mention Defendant's potential penalties to the jury. Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided. See United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). In federal court, the jury is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. §7.4 (2003). Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and prejudice against the United States.

The United States respectfully requests this Court to preclude any mention of possible penalty and/or felony designation at any point during the trial.

**G. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court

during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### H. THE COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY DEFENSE WITNESSES

The United States has requested reciprocal discovery, and this Court granted the reciprocal discovery motion on April 1, 2008. The United States is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

### I. THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY

A district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992)(Internal quotation omitted.)

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d 994, 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. 394, 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d 193, 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195 (Internal quotations omitted.)

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and an invitation for jury nullification that would result from such comments.

**K. UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY**

The Court granted the United States' request for reciprocal discovery. As of the date of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the

United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**III**

**<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully asks that the Court grant its motions.

DATED: April 21, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

***<u>/s/ Christina M. McCall</u>***

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN BARRERA-BARRERA,<br>Defendant. | Case No. 08CR0014-WQH<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S MOTIONS IN LIMINE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Christian de Olivas

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2008.

/s/ Christina M. McCall
CHRISTINA M. McCALL